THE HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GRAYS HARBOR ADVENTIST CHRISTIAN CHURCH, a Washington non-profit organization, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CARRIER CORPORATION, a Delaware corporation <br><br> Defendant. | Case No. C05-5437 RBL <br><br> ORDER GRANTING PLAINTIFFS' MOTION TO AMEND CLASS ACTION COMPLAINT |

This matter comes before the Court on Plaintiffs' Motion to Amend Complaint [Dkt. #110]. The Court has considered the Motion (and supporting Declaration) [Dkt. #s 110, 112], as well as Defendant Carrier Corporation's Response (and supporting Declaration and exhibits) [Dkt. #s 141-42], Plaintiffs' Reply (and supporting Declaration and exhibits) [Dkt. #s 150-51], and the file herein. For the reasons explained below, the Court GRANTS this motion.

BACKGROUND

Carrier is the largest furnace manufacturer in the United States. Carrier offers medium-efficiency (80 percent) and high-efficiency (90 percent) gas furnaces under a variety of brand names. This action focuses on high-efficiency condensing gas furnaces manufactured by Carrier between 1988 and 2005 and sold to consumers under the trade names "Carrier," "Bryant," and "Payne."

High-efficiency gas furnaces capture more energy from the flue gas than medium-efficiency gas furnaces by passing the flue gas exiting from the conventional, primary heat exchangers through a second

ORDER
Page - 1

set of heat exchangers, known as secondary or condensing heat exchangers ("CHXs"). Carrier released a CHX system after 1988 which featured a plastic, polyprophylene laminate ("PPL") coating over the galvanized carbon steel CHX, as well as an aluminized steel coupling box. This PPL-CHX system was Carrier's uniform product offering between 1988 and 2005.

Plaintiffs allege that the PPL-CHX system is defective and exhibits common and uniform failure modes across all Carrier high-efficiency furnace brands and models. Plaintiffs assert four causes of action in their Class Action Complaint for damages, injunctive relief, and restitution:  (1) actionable misrepresentation; (2) violation of the Washington Consumer Protection Act, RCW 19.86, et seq., (3) unjust enrichment; and (4) breach of express warranty.

Plaintiff's filed this class action on June 29, 2005. At the request of both parties, the Court extended the deadline for adding parties from February 28, 2006, to August 18, 2006. Plaintiffs filed a motion for class certification on December 6, 2006, and this Court certified the class on May 1, 2007. Plaintiffs filed this motion to amend their Complaint on May 16, 2007.

Plaintiffs' present motion seeks leave to amend their Complaint to add Bruce Kelly as a class representative. Mr. Kelly purchased his Lake Forest Park, Washington, home in 1996. The prior owner of his home had installed a Carrier high-efficiency condensing furnace (a pre-team 40 Carrier furnace[1]) on February 14, 1992. The PPL-CHX of this furnace failed in 1995 and was replaced with a new PPL-CHX part. During a routine inspection of the furnace in 2006, a technician determined that Mr. Kelly's flue gas contained over 1000 ppm of carbon monoxide (CO), exceeding the 400 ppm safety allowance specified by ANSI. Mr. Kelly paid $1,500 to replace this PPL-CHX part.

DISCUSSION

**A.    Legal Standard**

Once the court has entered a pretrial scheduling order pursuant to Fed. R. Civ. P. 16, the standards of that Rule rather than Fed. R. Civ. P. 15 govern amendment of the pleadings. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992); *Eckert Cold Storage, Inc. v. Behl*, 943 F.Supp.

---

[1] In 1993, Carrier changed the design of its high-efficiency furnaces. Carrier's high-efficiency furnaces manufactured after 1993 are called "Team 40" furnaces and those manufactured prior to 1993 are called "pre-Team 40." The class certified by this Court extends back to January 1, 1989 and therefore includes both Team 40 and pre-Team 40 furnaces.

1230, 1232-33 (E.D. Cal. 1996).[2]  Orders entered before the final pretrial conference may be modified only "upon a showing of good cause." Fed.R.Civ.P. 16(b).  A party cannot satisfy this good cause requirement when that party had the information needed to support the amendment but failed to exercise reasonable diligence in seeking leave to amend. *Precor, Inc. v. Fitness Quest, Inc.*, No. C05-0994L, 2007 WL 136749, at *2 (W.D. Wash. Jan. 12, 2007); *see Mansourian v. Board of Regents of the Univ. of Cal.*, No. CIV S-03-2591 FCD EFB, 2007 WL 841739, at *1 (E.D. Cal. Mar. 20, 2007); *see also Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994).

The good cause requirement of Fed. R. Civ. P. 16 primarily considers the diligence of the party seeking the amendment. *Mammoth Recreations*, 975 F.2d at 609.  When evaluating whether a party was diligent, the Ninth Circuit has determined that "the focus of the inquiry is upon the moving party's reasons for modification.  If that party was not diligent, the inquiry should end." *Id.* at 610.  Where a defendant raises a new defense, the Court may find good cause to grant plaintiff's motion to amend. *Lumbermans Mutual Cas. Co. v. Luciano*, 195 Fed. Appx. 590, 591-2 (9th Cir. 2006).

Only after the moving party has demonstrated diligence under Fed. R. Civ. P. 16 does the court apply the standard under Fed. R. Civ. P. 15 to determine whether the amendment was proper. *See Mammoth Recreations*, 975 F.2d at 608; *Eckert Cold Storage*, 943 F.Supp. at 1232 n. 3.  "[L]eave is to be freely given when justice so requires." Fed. R. Civ. P. 15(a).  Leave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay. *Forman v. Davis*, 371 U.S. 178, 182 (1962); *Martinez v. Newport Beach*, 125 F.3d 777, 785 (9th Cir. 1997); *see also Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999) (holding that for a denial of leave to amend there must be a showing of "prejudice to the opposing party, bad faith by the moving party, or futility of amendment").  Prejudice is the most important of these factors and the "prejudice must be substantial" in order for leave to be denied. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  Although granting a motion to amend a complaint in the later stages of discovery

---

[2]To rely solely on Fed. R. Civ. P.15 after a pretrial scheduling order has been entered would "render scheduling orders meaningless and effectively would read Fed. R. Civ. P. 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419  (11th Cir. 1998); *see also Mammoth Recreations*, 975 F.2d at 610 (adopting Fed. R. Civ. P. 15's standards for amending the complaint would "undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier"); *Eckert Cold Storage*, 943 F.Supp. at 1232 n. 3.

may require delaying trial and reopening discovery, "such delays do not constitute undue prejudice to the defendant." *Genetech, Inc. v. Abbott Laboratories*, 127 F.R.D. 529, 531 (N.D. Cal. 1989). Most courts hold that undue delay alone is not enough to support denial of a motion for leave to amend. Schwarzer, Tashima, Wagstaffe, *Rutter Group Practice Guide: Federal Civil Procedure Before Trial § 8:417* (The Rutter Group 2007). *But cf. AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (holding that an 8-month unexplained delay alone was a sufficiently egregious basis for denying leave to amend).

Granting or denial of leave to amend rests in the sound discretion of the trial court and will be reversed only for abuse of discretion. *Swanson v. U.S. Forest Service*, 87 F.3d 339. 343 (9th Cir. 1996). *See also U.S. v. Dang*, __ F.3d __, 2007 WL 1500310, at *6 (9th Cir. May 24, 2007)

**B.     Good Cause**

Plaintiffs failed to address Fed. R. Civ. P. 16's good cause requirements in their Motion [Dkt. #110], relying instead solely upon Fed. R. Civ. P. 15. Although Plaintiffs conceded their err in their Reply [Dkt. #150] and aligned their arguments to conform with both Rules, Carrier argues that a party may not raise arguments for the first time in a reply brief. In support of their argument, Carrier cites *Aiello v. FKI Industries, Inc.*, No. C04-2552Z, 2006 WL 2819333, at *6, (W.D. Wash. Sept. 28, 2006) ("[t]he Court does not consider this argument because Defendants raise it for the first time in their reply brief, and Plaintiffs have not had an opportunity to respond") and *Rush Indus. v. Garnier, LLC*, No. CV 05-4910 (LDW) (ETB), 2006 WL 4122091 (E.D.N.Y. Dec. 15, 2006) ("[p]laintiff argues good cause for the first time in its reply brief. However, an argument may not be made for the first time in a reply brief.") This Court does not agree. *Aiello* cites to *Okanogan Highlands Alliance v. Williams*, 236 F.3d 468, 478 n. 4 (9th Cir. 2000) in support for the conclusion quoted by Carrier. *Okanogan*, along with the line of preceding cases, involves an appeal from a district court decision where the appellant raises a new, substantive argument in their reply. *See generally Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1413-14 n. 6 (9th Cir. 1990); *Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 738 (9th Cir. 1986); *International Union of Bricklayers and Allied Craftsmen Local No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir. 1985). This Court concludes that the purpose for the rule cited in *Aiello* was intended for such appeals and *not* for non-dispositive motions as is the case here. *Aiello* itself involved a reply to a motion

for summary judgment. Furthermore, this Court is unaware of any Ninth Circuit precedent which holds that new arguments may not be raised in a motion to amend a complaint. Additionally, the Second Circuit precedent preceding *Garnier* is far less absolute than the rule quoted by Carrier, allowing for a Court's discretion in determining whether to hear an argument raised for the first time in a reply. *See Knipe v. Skinner*, 999 F.2d 708, 710-11 (2d Cir. 1993) (" 'failure to present this claim in [the] original brief before this court provides [*a*] ground . . . for our refusal to hear this claim' " (*quoting N.L.R.B. v. Star Color Plate Serv.*, 843 F.2d 1507, 1510 n.3 (2nd Cir. 1988)) (emphasis added)). This Court concludes that a court may consider arguments raised for the first time in a Reply brief in response to the non-moving parties' arguments to a non-dispositive motion.

Carrier argues that the facts of the present case are in accord with *Precor* and *Mansourian* and therefore leave to amend should be denied. In *Precor*, the court denied leave to amend in a patent infringement case to identify additional accused products. In denying leave to amend, the Court ruled that "[i]f plaintiff had investigated their claims in a timely fashion they would have been able to amend their complaint well before the May 5, 2006 deadline" because Plaintiffs had access to the information needed to amend their Complaint. *Precor*, 2007 WL 136749, at *2. In *Mansourian*, the Plaintiffs of a proposed class action sought leave to add class representative who still attended school at the defendant-university where the other named Plaintiffs had already graduated. The Court denied Plaintiffs' motion, holding that Plaintiffs could not demonstrate good cause because they had known for months that "none of the class representatives would be current UC Davis students" but still failed to seek leave to amend. *Mansourian,* 2007 WL 841739, at *3.

Carrier argues that like the plaintiffs in *Precor* and *Mansourian*, Plaintiffs here cannot demonstrate good cause. Carrier argues that Plaintiffs' sole justification for seeking leave to amend is to add a Plaintiff who owned a pre-Team 40 furnace despite having had the information needed to amend their Complaint since May 3, 2006, when a pre-Team 40 furnace from Washington was inspected by Plaintiffs' expert. Additionally, Carrier notes the fact that Plaintiffs had been contacted by Mr. Kelly between November 27, 2006 and December 7, 2006, long before they sought leave to amend in May 2007.

Plaintiffs argue that the delay was the responsibility of Carrier. Plaintiffs contend that their claims arise from a uniform design defect in "*all* of Carrier's high efficiency furnaces sold since 1989 . . .

regardless of year." Reply [Dkt. #150] at 3. Although Plaintiffs learned that Carrier had implemented several design changes during the course of the class period (e.g., from pre-Team 40 to Team 40 in 1993), "the defect Plaintiffs allege - use of PPL CHXs - did not change, and Plaintiffs and their experts concluded there are no relevant distinctions between class members based on which model of furnace they purchased." *Id*. Plaintiffs argue that it was Carrier who first made this distinction relevant when Carrier filed its opposition to class certification in January of 2007, suggesting that Carrier would attempt to reduce its liability by arguing that the Team 40 changes to its furnace design addressed any existing problems with the pre-Team 40 furnace design. Then, two days after class certification was approved, Carrier served onto the Plaintiffs the Marais expert report in which Carrier provided a new basis for its prior argument relying on national statistics to support a distinction between pre-Team 40 and Team 40 furnaces.[3] Estok Decl. [Dkt. #151] at Ex. B. Plaintiffs contacted Carrier the following day to inform them of Plaintiffs' intention to file a motion to amend and filed that motion on May 16, 2007. While it is true that Plaintiffs knew that Carrier planned to argue the Team 40 distinction since January 2007 and had the underlying data since March, the records shows that Carrier did not assert this defense in this case until May 3, 2007. This Court concludes that Plaintiffs have acted diligently under the circumstances of this case and that the facts of this case are sufficiently distinguishable from those of *Precor* and *Mansourian* to conclude that Plaintiffs have shown good cause to satisfy Fed. R. Civ. P. 16.

### C.    Prejudice

Carrier argues that Plaintiffs' motion should be denied because of the prejudice Carrier would experience as a result. Carrier alleges that "[a]llowing Plaintiffs to amend their Complaint would therefore deprive Carrier of the ability to expose the critical differences between Mr. Kelly's allegations and those of the other class members, and their impact on the issue of class certification." Response [Dkt. #141] at 2. Carrier's argument appears to be without basis: Carrier has already deposed Mr. Kelly and has had an opportunity to inspect both Mr. Kelly's CHX and his home. *Id* at n.2; Estok Decl. [Dkt. #151] at ¶ 7. The Court is therefore not convinced that allowing Plaintiffs to amend their Complaint would deprive Carrier of the opportunity to "expose the critical differences" alleged.

---

[3]On June 11, 2007, Carrier filed a Motion to Decertify the Class [Dkt. #131] in which they rely on this distinction as a basis to decertify the class and specifically cite to Dr. Marais' statistical analysis of the national warranty data.

Carrier also argues that it will be prejudiced because the addition of Mr. Kelly raises a new substantive issue having to do with CO that would require rebriefing the class certification. The Court is not convinced by Carrier's arguments considering that Carrier served Plaintiffs Dr. Kimble Clark's May 3, 2007 expert report in which the doctor specifically addressed the CO issue. *Id.* at Ex. H. The Court therefore concludes that Carrier will not be substantially prejudiced if the Court grants Plaintiffs' leave to amend.

**D.     Typicality**

The claims or defenses of the representative parties must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Typicality does not require claims to be "substantially identical" to those of the Class; representative claims are "typical" if they are "reasonably co-extensive" with those of absent class members. *Id.*

Plaintiffs argue that Mr. Kelly is already a member of the Class. On May 1, 2007, the Court certified the following Class of individuals:

> All individuals and entities in the state of Washington who currently own Carrier 90% high-efficiency condensing furnaces manufactured after January 1, 1989, and equipped with PPL-CHXs, and former owners of such furnaces in the state of Washington whose furnaces experienced CHX failure.

Order Granting Pls.' Mot. for Class Certification [Dkt. #100] at 1. The Court held that Plaintiffs asserted claims which are typical of the other class members' claims, "in that each class member (1) owns or owned a Carrier high-efficiency furnace, (2) alleges that Carrier concealed a known defect in the CHX, and (3) allegedly suffers injury from a defective furnace that will fail prematurely." *Id.* at 4. Plaintiffs argue that Mr. Kelly's allegations also satisfy all of these criteria: Plaintiffs note that Mr. Kelly is a Washington resident and presently owns a Carrier 90% high-efficiency condensing furnace manufactured after January 1, 1989, equipped with PPL-CHX. Plaintiffs also argue that Mr. Kelly will fairly and adequately protect the interests of the class and insist that they act in good faith and "simply seek to provide the most effective representation for the Class." Motion [Dkt. #110] at 10.

Carrier argues that Plaintiffs seek to introduce a new substantive issue through Mr. Kelly. Unlike

ORDER
Page - 7

1 Mr. Kelly, Carrier argues that none of the existing named class representatives alleged that the potential existed for elevated levels of CO, nor did they allege that they had experienced elevated levels of CO in their furnaces. Carrier notes that Mr. Kelly alleges that his flue gas contained elevated levels of CO "even though he conceded that there was no carbon monoxide detected in the air vents or registers in his house." Def.'s Response [Dkt. #141] at 4. Carrier argues that Mr. Kelly's deposition testimony shows that his claims are not typical and that granting Plaintiffs' proposed amendment would require revisiting this Court's class certification ruling.

Considering the parties' arguments, the Court holds that Mr. Kelly's representative claims, although not substantially identical to those of the Class in terms of the CO issue, are "reasonably co-extensive" with those of absent class members to be "typical." *Hanlon*, 150 F.3d at 1020.

## CONCLUSION

Holding that Plaintiffs have standing to raise Fed. R. Civ. P. 16 good cause arguments, that Plaintiffs have shown good cause for the delay to amend the complaint, that Carrier will not be substantially prejudiced by the amendment and that Mr. Kelly is typical of the Class, the Court holds that Fed. R. Civ. P. 15 grants the Court discretion to GRANT Plaintiffs' Motion to Amend Complaint [Dkt. #110].

IT IS SO ORDERED.

DATED this 26th day of July, 2007.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE