05-CV-05437-OBJ

FILED _____ LODGED
_____ RECEIVED

MAR 2 4 2008

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

Clerk of Court
3100 United States Courthouse
1717 Pacific Avenue
Tacoma, WA 98402

Furnace Objections
P.O. Box 56636
Jacksonville, FL 32241-6636

Case Number: CV05-5437, Grays Harbor Adventist Christian School V. Carrier Corporation

To the Honorable Judge Leighton and Class Counsel:

My husband, Lyle Gatchel, and I, Jo Ellen Simonsen, purchased a Carrier 58MXA in 2001 for $2950, making us class members of the above referenced case. We are unable to attend the Fairness Hearing. Please accept this letter as notice that **we as class members object to the proposed settlement** in the above referenced case. This letter will outline the reasons we object.

1. **Our actual costs ($1017.39) far exceeded the proposed settlement amount, and we will not be made whole by the settlement for the expenses we incurred or for recommended future trip charges for recommended periodic inspections of the heat exchanger.**

   We experienced a failure of the heat exchanger at the beginning of the 2005 heating season when the furnace was just going into its fourth season of service. Our home's carbon monoxide detectors alarmed, and a dangerous level of the gas was being released by the furnace. As you can see from the paperwork included the gas and power were shut off to the unit by the service technician, and we were without a working furnace for four days (Attachment A). The trip charge and service fees to diagnose and replace the heat exchanger which was under a lifetime limited warranty was $661.50, paid by us on our Capital One credit card, receipt enclosed (Attachment B). We incurred interest on that debt and still carry that debt. The proposed settlement only covers up to $270, far less that are actual direct costs.

   We also made several attempts to recover the labor and trip charge expense from Carrier Corporation and made claims against our warranty which were denied. On October 26, 2005, I made several phone calls to resolve the disagreement between their practice to not cover labor and their warranty which did. I spoke with a Carrier Customer Service Rep. Christina (Carrier ID# 1752), and Senior Rep. Ken, (Carrier ID# 1738). We also pursued assistance by phone from Rhodes

Heating and Air Conditioning Service Manager Kevin Tobin and the regional Carrier Technical Support person Ed Patterson who advised us that labor would not be covered by the manufacturer. You will see that I composed a letter asking that the faulty part which had been removed be maintained in its condition through the proper chain of custody in the event legal action or investigations took place (Attachment C). I conducted internet research seeking similar complaints and found some evidence at that time of others experiencing similar problems with their high-efficiency furnace. Additionally, I filed a complaint with the Consumer Protection Section of the Ohio Attorney General's Office (Attachment D). I would estimate that the loss of time to pursue my rights as I understand them to be provided in the warranty was no less than twelve hours, and my hourly rate at that time was in excess of $20.

Therefore to fully recoup from Carrier's faulty heat exchanger and denial of warranty claims, I believe a fair settlement for us should be based minimally above our family's total loss: $661.50, plus $115.89 in interest (12.9% APR on that amount carried since Oct. 31, 2005 through projected settlement date of April 2008), plus $240 in hourly rates (12 hours at $20/hour) to contest charges which amounts to **$1017.39.** As you will note, the technicians recommend the new heat exchanger should be checked periodically which will result in the very least multiple additional trip and inspection charges (Attachment A). It is not explicitly clear that trip or inspection charges would be covered by the settlement's extended warranty.

2. **The warranty presented at the time of purchase was either not complied with as written, or at very best was misleading to us, the consumers. When challenged, Carrier presented a *revised version* of the warranty that differed from the warranty provided to us in one significant aspect.**

    We specifically asked about the warranty and were impressed by the Lifetime Limited Warranty on the Heat Exchanger. If you read the warranty as it is published, the bold uppercase headings seemingly subdivide the document into three distinct types of warranties: 1) a One-year Limited Warranty; 2) an Extended 2-Year Limited Warranty on certain components; 3) the Extended Warranty on Heat Exchanger Only: Lifetime Limited Warranty, which applies in this case. Labor is explicitly excluded under the One-Year Limited Warranty, and then implied to be excluded in the Extended 2-Year Warranty on other specific components (microprocessor control center, hot surface ignitor and inducer motor). However, **labor is not explicitly nor implicitly excluded from the Lifetime Warranty on the Heat Exchanger**. In fact, the subsequent bold-faced sections on Warranty Conditions, Limitations of Warranties, and itemized list of what "Carrier Will Not Be Responsible For" **do not exclude labor** and suggest through the inclusion of the following text in the Limitations of Warranties section that labor would be covered: *"All work under the terms of this warranty shall be performed during normal working hours."*

I challenged Carrier's denial of our claim and referred them to the terms of the Heat Exchanger portion of the warranty. They maintained their position that labor is not covered. In response to my complaint to the Ohio Attorney General's Office Consumer Protection Section, **Carrier responded by providing a copy of a different warranty than we were provided at purchase.** You will see the warranty that is in the instruction manual provided at purchase is Form No. 530-073 (included as Attachment E). It is critically different from the one Carrier used in their response to our complaint to the Attorney General. The form number for the document in Carrier's response to the Attorney General is apparently a more recently revised Form No. 530-108 where the text in question has been apparently repositioned to apply to the Heat Exchanger (see Attachment F). As you can see it is difficult from the electronic copy provided to me by the AG's Office to determine what the language in the revised form, states as it appears blacked out which seems to be a result of highlighting by Carrier's representative as explained in Carrier's response (Attachment F and G). It may indeed exclude labor in this subsequently **revised** warranty which would mean that the labor exclusion was moved so that it may include all three warranties, **nonetheless, it did not exclude labor in the Form No. 530-073 (ours), and you will see the text in question was absolutely positioned differently in the warranty provided to us than the one Carrier provided to the Attorney General's Office.**

3. **The warranty as practiced was not in good faith. It inherently sets up an unfair relationship that benefits Carrier and its retail distributors/authorized service providers at the cost of the consumer.**

   Much of the argument detailed in item 2 above is germane to this point as well. Additionally, Carrier's practice regarding labor cost exclusion establishes an incentive for its authorized distributors/service providers to sell a faulty product that has a likelihood of generating expensive service calls at the customer's expense. Known problems in the Heat Exchanger component were much more likely to be known by the manufacturer and service providers than could have possibly been known by potential customers. In fact consumers are compelled to use only authorized service providers to keep the furnace maintained and the warranty provisions intact.

4. **The manufacturer should pay punitive costs in addition to actual costs as a result of its persistent denial and prolonging of warranty claims on the Heat Exchanger for labor/trip charges.**

   Our attempts to recover labor/trip costs were continually, rudely and in our opinion falsely dismissed by Carrier representatives as detailed in items 1 and 2.

5. **The failure was responsible for a life threatening carbon monoxide leak, and only through the outlay of significant labor/trip costs were we able to protect our family from this defective product.**

**6. We have no confidence that the replacement Heat Exchanger provided by Carrier is an improved and safe device that will not similarly fail.**

For these six reasons we object to the proposed settlement which would award us less than a third of the costs we realized and which would seemingly carry no punitive accountability. We are also deeply concerned for our fellow Carrier furnace owners who, for whatever reasons, may be unaware of the threat posed by the faulty Heat Exchanger and whose families' lives or safety may be jeopardy. We also feel it is our responsibility to act in the interest of the class members may not have the documentation or ability to pursue their rights. Additional documents and photos related to our Heat Exchanger, its replacement and the attempted and denied claims on our warranty are attached for the Court's consideration. Please note, my name is misrepresented in the proposed settlement notices. The claim and objection should be processed either under my legal name Jo Ellen Simonsen, or my husband's name Lyle Gatchel, but not under Jo Gatchel, which was an error in Rhodes Heating documentation. The credit card account used was in the name of Jo Ellen Simonsen. I will correct that in settlement claim correspondences as well.

Sincerely,

*Lyle D. Gatchel* (signature)

Lyle D. Gatchel and Jo Ellen Simonsen
P.O. Box 452
Nevada, OH 44849

Enclosures:
Attachment A- Documentation from Rhodes Heating on failure, labor and payment
Attachment B- Credit Card Receipt for Labor to remove warranted Heat Exchanger
Attachment C- Letter to Rhodes Heating and Air, requesting part be kept available for legal action
Attachment D- Our complaint to Attorney General's Consumer Protection Section
Attachment E- Warranty Form No. 530-073 provided at purchase
Attachment F- -**Wrong** Warranty Form No. 530-108 **provided by Carrier** to Attorney General Consumer Protection Section in response to our complaint
Attachment G-Carrier's response to our complaint to AG's Consumer Protection Section
Attachment H-Photo of Faulty Heat Exchanger

# RHODES ✓ 73199

**436 WEST CENTER ST.   MARION, OHIO 43302**
**(740) 382-9085**
Heating & Air Conditioning, Inc.   Mechanical Contractors

| | |
|---|---|
| DATE | 10/25/05 |
| DATE ORDERED | 10/25/05 |
| DATE SCHEDULED | 10/28/05 |

NAME: Joe Gitchel - Simonsen
STREET: 310 South Main
CITY: Nevada   STATE: OH   ZIP:
MAKE: Carrier   MODEL: 58MXA080   SERIAL NUMBER: 4001A13960
WK PHONE:
PHONE:

☐ WARRANTY  ☐ CONTRACT  ☐ SERVICE CONTRACT  ☐ NORMAL  ☐ RES.  ☐ COMM.
**SERVICE**

JOB LOCATION:

**DESCRIPTION OF WORK**
Install new heat exchanger

- Arrived and disconnected all power, removed induced pressure switch, gas valve, gas pipe, burners, burner box, removed access plate to heat exchanger. Removed old heat exchanger and thoroughly inspected primary was fine, but after inspecting secondary, found that the poly appeared coated on inside and started...

Call 740-482-3014 for VISA # to pay in full ASAP  J. Simonsen

| QUANTITY | ITEM OR PART DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| | Dirt/soot of plugging the secondary side. Put together new heat exchanger and installed, reinstalled all components and started up, checked for carbon monoxide and got no reading. Appears to be running fine at this time. Checked manifold gas pressure. Recommend heat exchanger be checked periodically. | | |
| | 4305-5003-0249-6024 exp 8/07 previous visit | | 149.50 |

**TOTAL PARTS**

| | WRITE OR CODE | AMOUNT |
|---|---|---|
| H | | |
| R | | |
| G | | |
| S | | |
| F | REFRIG. | |
| R | | |
| O | | |
| M | REFER. MACH. USAGE | |
| B | | |
| L | | |
| O | | |
| W | TOTAL OTHER CHARGES | $ |

**ENVIRONMENT CHECK LIST**

| | TYPE | SYSTEM QTY | | | QTY |
|---|---|---|---|---|---|
| R (1) | REFRIG | | E | CHANGED OUT (OR REPLACED)? ☐YES ☐NO | |
| E (2) | RECOVERED? ☐YES ☐NO | | Q | | |
| F | | | U | | |
| R (3) | RECYCLED? ☐YES ☐NO | | I | | |
| I | | | P | DIS-MANTLED? ☐YES ☐NO | |
| G | | | M | | |
| E | RECLAIMED? ☐YES ☐NO | | E | REFRIGERANT DISPOSAL | |
| R | RETURNED TO THIS SYSTEM? ☐YES ☐NO | | N | (6) | |
| A (4) | DISPOSAL | | T | | |
| N | | | | OUR PERSONNEL RECOMMEND: | |
| T | NON USEABLE ☐YES ☐NO | | | | |
| | (5) DISPOSAL | | | OWNER'S INITIALS ACCEPTED ☐ DECLINED ☐ | |

**CHECK LIST**

☐ COMPRESSOR
 ☐ SUCTION ___ PSI
 ☐ HEAD ___ PSI
 ☐ VOLTS ___ AMPS
 ☐ ELECTRICAL CONNECTIONS
 ☐ CONTACTS TIGHT & CLEAN
 ☐ OIL LEVEL & CONDITION

☐ CONDENSER COIL
 ☐ CLEAN COIL & CHECK FIN COND.
 ☐ ENT ___°F  LVG ___°F

☐ REFRIGERANT
 ☐ LEAK  ☐ CHARGE

☐ FAN AND MOTOR
 ☐ VOLTS ___ AMPS
 ☐ ELECTRICAL CONNECTIONS
 ☐ CONTACTS TIGHT & CLEAN
 ☐ FAN PULLEYS (ADJUST BELT)
 ☐ CHECK LUB BEARINGS & MOTOR

☐ EVAPORATOR COIL
 ☐ CLEAN COIL & CHECK FIN
 ☐ ENT DB ___°F LVG DB ___°F
 ☐ ENT WB ___°F LVG WB ___°F

☐ CONDENSATE AREA
 ☐ INSPECT & CLEAN DRAIN PAN
 ☐ INSPECT & CLEAN DRAIN

☐ AIR FILTERS
 ☐ CLEANED  ☐ REPLACED
 FILTER SIZE ___

☐ HEATING ASSY.
 ☐ BURNER & HEAT EXCHANGER
 ☐ FUEL SUPPLY & PRESSURE
 ☐ PILOT ASSEMBLY
 ☐ FLAME ADJUSTMENT
 ☐ PRIMARY RELAY & FLUE
 ☐ FAN & LIMIT SWITCH OPER.
 ☐ BLOWER ASSEMBLY
 ☐ RV VALVE
 ☐ STRIP HEAT
 ☐ DEFROST CYCLE

☐ ELECTRICAL COMP'TS.
 ☐ RELAYS  ☐ CONTRACTORS
 ☐ OVERLOAD  ☐ PRESS. SWITCH

☐ THERMOSTAT
 ☐ O.K.  ☐ REPLACE
 ☐ RELOCATE

**TRAVEL TIME**
ARRIVED ___
TRAVEL ___
TIME ___

**MILEAGE**
ENDING ___
START ___
MILES ___
TOTAL ___
X ___/HR. = ___
X ___/HR. = ___
TRIP CHARGE $ ___

| TECH #1 | HRS. @ REGULAR /HR.= | HRS. @ OVERTIME /HR.= |
|---|---|---|
| TECH #2 | HRS. @ REGULAR /HR.= | HRS. @ OVERTIME /HR.= |

TECHNICIAN SIGNATURE: [signature]

**TERMS DUE UPON COMPLETION**

I HAVE THE AUTHORITY TO ORDER THE ABOVE WORK AND DO SO ORDER AS OUTLINED ABOVE. IT IS AGREED THAT THE SELLER WILL RETAIN TITLE TO ANY EQUIPMENT OR MATERIAL FURNISHED UNTIL FINAL & COMPLETE PAYMENT IS MADE, AND IF SETTLEMENT IS NOT MADE AS AGREED, THE SELLER SHALL HAVE THE RIGHT TO REMOVE SAME AND THE SELLER WILL BE HELD HARMLESS FOR ANY DAMAGES RESULTING FROM THE REMOVAL THEREOF.

X [signature]
AUTHORIZED SIGNATURE
ABOVE ORDERED WORK HAS BEEN COMPLETED AND I ACKNOWLEDGE RECEIPT OF MY COPY.
X [signature] J. Simonsen

| | |
|---|---|
| SUB-TOTAL | 149.50 |
| EPA CHARGE | |
| TRIP CHARGE | |
| TAX | |
| **TOTAL AMOUNT DUE** | **149.50** |

DATE: 10/28/05

# RHODES

**73303**

436 WEST CENTER ST.   MARION, OHIO 43302
(740) 382-9085
Heating & Air Conditioning, Inc.   Mechanical Contractors

| | |
|---|---|
| DATE | 10/28/05 |
| DATE ORDERED | 10/25/05 |
| DATE SCHEDULED | 10/25/05 |

NAME: To Gatchel
STREET: 310 S. Main
CITY: Nevada   STATE: OH

MAKE: — MODEL: — SERIAL NUMBER: 44844

☐ WARRANTY ☐ CONTRACT ☐ SERVICE CONTRACT ☐ NORMAL ☐ RES. ☐ COMM.

**SERVICE**

JOB LOCATION: Co — Tested Alarmed

### DESCRIPTION OF WORK
- Checked Alarm — Alarm
Good — went & checked furnace, furnace
has cracked heat exchanger in
heat exchanger still under warranty,
Need to order new heat exchanger ASAP

M# 58MXA080-F-1-16
S# 4001A13866

| | QUANTITY | ITEM OR PART DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|---|
| | | HEAT EXCHANGER ORDERED | | |
| | | TO ARRIVE 10/27/05 | | |
| | | | | |
| | | TO GATCHEL | | |
| | | Home # 740-482-3014 | | |
| | | Cell # 419-209-2447 | | |
| | | Let them know when | | |
| | | H/E will be in & set | | |
| | | time when we can change | | |
| | | it. | | |
| | | NOTE: Shut Gas + Power off | | |
| | | to unit, Not responsible | | |
| | | for furnace after we leave. | | |

| TECH #1 | Carmen Weathersbee | 1 HRS. @ $64.00/HR. = REGULAR | HRS. @ /HR. = OVERTIME | $64.00 |
| TECH #2 | HRS. @ /HR. = REGULAR | HRS. @ /HR. = OVERTIME | |
| TECHNICIAN SIGNATURE | Rodger Mills CERT.# | | | |

TERMS DUE UPON COMPLETION

| | |
|---|---|
| SUB-TOTAL | $64.00 |
| EPA CHARGE | |
| TRIP CHARGE | $79.50 |
| TAX | |
| Reserve Charge | $6.00 |
| **TOTAL AMOUNT DUE** | **$149.50** |

AUTHORIZED SIGNATURE
DATE: 10/25/05

```
           BATCH: 015

       [MERCHANT NAME]
       436 W [STREET]
       [CITY]         CA [ZIP]

           DATE: 10/31/05

    REF:      0031
    CD TYPE:  VI
    TR TYPE:  PR

    AMOUNT:      $461.50

    ACCT: [CARD NUMBER]    EXP: 0807
    AP:   026308

    CARDMEMBER ACKNOWLEDGES RECEIPT OF
    GOODS AND/OR SERVICES IN THE AMOUNT OF
    THE TOTAL SHOWN HEREON AND AGREES TO
    PERFORM THE OBLIGATIONS SET FORTH BY THE
    CARDMEMBER'S AGREEMENT WITH THE ISSUER

         THANK YOU FOR USING VISA

    X_____
    TOP COPY-MERCHANT BOTTOM COPY-CUSTOMER

              [signature]
```

October 28, 2005

Rhodes Heating and Air Conditioning
436 W. Center St.
Marion, OH 43302

To the Service Manager, Rhodes Heating:

We request that the defective and warranted Heat Exchanger parts which were removed from our Carrier 58MXA be returned to the proper party under the conditions of the manufacturer's warranty requirements. We also request that the appropriate holder maintains these parts in their current condition, should they be needed for inspection in the pursuit civil or class action claims, and we ask that a copy of this request accompany the transfer of the defective parts to all rightful parties.

We intend to seek reimbursement from Carrier for the labor costs and trip charges incurred to have a defective heat exchanger diagnosed and uninstalled and a properly functioning heat exchanger reinstalled, as provided for in the Heat Exchanger Only Extended Warranty provided at purchase. Likewise we expect the defective parts will be made available for actions related to consumer protection investigations and/or a government or manufacturer's recalls.

We appreciate your assistance in this matter.
Thank you,


Jo Simonsen and
Lyle Gatchel
310 S. Main St.
Nevada, OH 44849

## Complaints Details

Office of the Ohio Attorney General

Complaint No.  **294907**

Date Entered:  **10/26/2005**

**Consumer:**

LYLE GATCHEL
AND JO SIMONSEN
P.O. BOX 452
NEVADA, OH 44849

(740)482-3014 Daytime

Email:  jsimonsen@woh.rr.com

**Supplier:**

CARRIER
CONSUMER RELATIONS
DEPT
CARRIER PKY
SYRACUSE, NY 13221

**Household Goods**

**Solicited via:**   Other

**Purchase Information:**
Product or Service: Household Goods
Problem Area: Warranty
Purchase Date:    10/15/2001
Total Price: $2,950.00
Disputed Amount: $350.00
Amount Paid so Far:  $0.00

**Description:**
The Heat Exchanger of our furnace is covered under a lifetime limited warranty. It is defective and being replaced by the vendor, Rhodes Heating and Air Conditioning, with a warrantied part from Carrier.

The dispute involves the coverage for the labor ($64/hr. estimated at 4-5 hours) and trip charges ($79.50, 2trips?) to replace the defective part. While it is Rhodes and Carrier's position that it is the industry standard to cover only parts, not labor, the language in the heat exchanger portion of the warranty presented at purchase does not read that way, and in fact implies that labor would be covered. "All work under the terms of this warranty shall be performed shall be performed during normal working hours." Likewise, the warranty explicitly states eight specific items that Carrier will not be responsible for; none of these eight exclusions reference labor, again suggesting labor to replace a faulty heat exchanger should be covered.

Two other non-applicable sections of the warranty (for other parts ex. microprocessor control, hot surface ignitor, etc.) do in fact exclude labor explicity, however the "Extended Warranty on Heat Exchanger Only" does not in any way, nor does it include a reference to the previously mentioned warranties as it does for the the other parts and portions.

The faulty heat exchanger in this four year old $3,000 furnace resulted in a dangerous carbon monoxide leak (alarmed) putting our family at risk, and left us without heat for what is estimated by Rhodes to 4 days of no heat. Under visual inspection, Rhodes has determined the heat exchanger has extensive corrosion in two of the three chambers of the heat exchanger to the point of creating holes in the walls of the exchanger unit which then leak

carbon monoxide into our home. The unit is in orignal, like new condition, and was installed by the authorized dealer, serviced only by the installer and used only approved parts.

My contact with two Carrier representatives left us unsatisfied and believing the warranty is fraudulent. Carrier is firm in its position and Rhodes Heating seems to support Carrier's interpretation that labor (to uninstall and reinstall the faulty part) are not covered.

The language of the warranty does not support this position, and therefore is inherently and explicitly misleading to the consumer.

**Satisfactory Solution:**
I would like all labor and trip charges required by the inspection, replacement and follow-up of this faulty product to be reimbursed, as implied by the warranty (estimated to be upward of $350).
Additionally, I would like to see other Carrier warranties modified to more clearly represent their intentions not to cover labor associated with the lifetime warranty on the heat exchanger unit. Finally, I would like the state to investigate the industry standard which currently seems to financially favor the maker of faulty furnace units and their authorized dealers over good faith consumers. It does not seem right to be able to sell defective parts and then charge the consumer the cost to replace the defective parts. In fact, the consumer is compelled to use only an authorized dealer for labor to replace the part in order to keep other provisions of the warranty intact, thereby creating an "incestuous" financial relationship between the manufacturer and dealer/service vendor against the consumer, essentially acting as a financial incentive to the authorized service provider to continue supplying faulty units provided by the manufacturer.

Complaint No. **294907**

Attachment E (Warranty provided at purchase)

# Carrier Air Conditioning Company
Division of Carrier Corporation



### FOR SERVICE OR REPAIR, FOLLOW THESE STEPS IN ORDER:

**FIRST:** Contact the installer. You may find his name on the product or in your Homeowner's Packet. If his name is not known, call your builder if yours is a new residence.

**SECOND:** Contact the nearest CARRIER distributor. (See telephone yellow pages.)

**THIRD:** Contact:
CARRIER CORPORATION
Consumer Relations Department
P.O. Box 4808
Syracuse, New York 13221
Telephone: 1-800-CARRIER (227-7437)

Model No. _____  Unit Serial No. _____

Date of Installation _____  Installed by _____

Name of Owner _____  Address of Installation _____

Effective on products manufactured after June 1, 1993. Supersedes any other warranty certificates supplied with the product.

---

# 58MXA Deluxe Indoor Fixed Capacity Condensing Gas Furnace Limited Warranty

**ONE-YEAR LIMITED WARRANTY**—CARRIER warrants to the original purchaser that this product will be free from defects in material and workmanship for a period of one year from the date of original installation (whether or not actual use begins on that date). At CARRIER'S sole option, a new or remanufactured part will be provided without charge to replace any defective part.

THIS WARRANTY DOES NOT INCLUDE LABOR or other costs incurred for diagnosing, repairing, removing, installing, shipping, servicing or handling of either defective parts or replacement parts. Such costs may be covered by a separate warranty or service agreement provided by the installer, which is separate and distinct from this factory warranty.

**EXTENDED 2-YEAR LIMITED WARRANTY ON MICROPROCESSOR CONTROL CENTER, HOT SURFACE IGNITOR, AND INDUCER MOTOR**—During the second through third years after the date of original installation, CARRIER further warrants the microprocessor control center and hot surface ignitor and inducer motor against defects in material or workmanship under normal use and maintenance. A new or remanufactured part, at CARRIER's sole option, will be provided under the same conditions as stated in the ONE-YEAR WARRANTY.

**EXTENDED WARRANTY ON HEAT EXCHANGER ONLY**

**LIFETIME LIMITED WARRANTY**— Beginning on the date of original installation, CARRIER warrants to the original purchaser, during his or her lifetime, that the heat exchanger will be free from defects in material and workmanship, provided, however, this warranty shall apply only to the original installation of the furnace in a single family dwelling (i.e., where the furnace services only one dwelling unit) used without interruption by the purchaser as his or her principal residence.

**Twenty-Year Limited Warranty**— Where the owner of the dwelling is not the original purchaser and in multi-family dwellings (i.e., where the furnace services more than one dwelling unit) and in non-residential and other applications, CARRIER warrants the heat exchanger against defects in material and workmanship for a period of twenty years from the date of original installation.

In order to fill this warranty obligation in either above, CARRIER WILL, AT ITS OPTION, provide a new heat exchanger without charge, or allow a credit in the amount of the then current retail selling price of an equivalent heat exchanger toward the purchase price of a new CARRIER furnace, or provide a new furnace without charge if the retail price of a new furnace is less than the retail price of a new or equivalent heat exchanger.

**WARRANTY CONDITIONS**

1. These warranties apply only to products in thier original installation location and become void upon reinstallation

2. Installation, use, care, and maintenance must be normal and in accordance with instructions contained in the owner's manual and CARRIER service information

3. Defective parts must be returned to distributor at purchaser's expense for credit.

**LIMITATIONS OF WARRANTIES** — ALL IMPLIED WARRANTIES (INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE) ARE HEREBY LIMITED IN DURATION TO THE PERIOD FOR WHICH THE APPLICABLE COMPONENT LIMITED WARRANTY IS GIVEN. SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, SO THE ABOVE MAY NOT APPLY TO YOU. THE EXPRESSED WARRANTIES MADE IN THIS WARRANTY ARE EXCLUSIVE AND MAY NOT BE ALTERED, ENLARGED, OR CHANGED BY ANY DISTRIBUTOR, DEALER, OR OTHER PERSON WHATSOEVER. ALL WORK UNDER THE TERMS OF THIS WARRANTY SHALL BE PERFORMED DURING NORMAL WORKING HOURS. ALL REPLACEMENT PARTS, WHETHER NEW OR REMANUFACTURED, ASSUME AS THEIR WARRANTY PERIOD ONLY THE REMAINING TIME PERIOD OF THE APPLICABLE COMPONENT WARRANTY.

**CARRIER WILL NOT BE RESPONSIBLE FOR:**

1. Normal maintenance as outlined in the installation and servicing instructions or owner's manual including filter cleaning and/or replacement and lubrication.

2. Damage or repairs required as a consequence of faulty installation, misapplication, or application by others, abuse, improper servicing, unauthorized alteration or improper operation.

3. Failure to start due to voltage conditions, blown fuses, open circuit breakers or other damages due to the inadequacy or interruption of electrical service.

4. Damage as result of floods, winds, fires, lighting, accidents, corrosive environments or other conditions beyond the control of CARRIER.

5. Parts not supplied or designated by CARRIER, or damages resulting from their use.

6. CARRIER products installed outside the continental U.S.A., Alaska, Hawaii and Canada.

7. Electricity or fuel costs or increases in electricity or fuel costs for any reason whatsoever including additional or unusual use of supplemental electric heat.

8. ANY SPECIAL INDIRECT OR CONSEQUENTIAL PROPERTY OR COMMERCIAL DAMAGE OF ANY NATURE WHATSOEVER. Some states do not allow the exclusion of incidental or consequential damages, so the above limitation may not apply to you.

**This warranty gives you specific legal rights, and you may also have other rights which vary from state to state.**

Form No. 530-073

Attachment F (Conflicting warranty from Carrier in response to complaint)



# CARRIER CORPORATION

FOR SERVICE OR REPAIR, FOLLOW THESE STEPS IN ORDER:

FIRST: Contact the installer. You may find their name on the furnace or in your Homeowner's Packet. If the installer's name is not known, call your builder or home retailer if yours is a new residence.
SECOND: Contact the nearest distributor. (See telephone yellow pages.)
THIRD: Contact:
CARRIER CORPORATION Consumer Relations
P.O. Box 4808
Syracuse, New York 13221
Phone: 1-800-227-7437

Model No. _____    Unit Serial No. _____

Date of Installation _____    Installed by _____

Name of Owner _____    Address of Installation _____

## Deluxe Condensing Gas Furnace Limited Warranty
(Model 58MXA)

**ONE-YEAR LIMITED WARRANTY** - Carrier (hereinafter referred to as "Company") warrants this furnace to be free from defects in material and workmanship. If a defect is found within one year from date of original installation of furnace (whether or not actual use begins on that date) Company will provide a new or remanufactured part, at Company's sole option, to replace any defective part, without charge for the part itself.

**THREE-YEAR LIMITED WARRANTY ON CONTROL, INDUCER MOTOR, AND HOT SURFACE IGNITOR ONLY** - If a defect is found in the control, inducer motor, or hot surface ignitor within three years from the date of original installation of furnace, Company will provide a new or remanufactured control, inducer motor, or hot surface ignitor, at the Company's sole option, to replace any defective control, inducer motor, or hot surface ignitor, without charge for the part itself.

**A. 20-YEAR LIMITED WARRANTY ON HEAT EXCHANGER ONLY** - Where the owner of the dwelling is not the original purchaser and in multi-family dwellings (i.e., where the furnace services more than one dwelling unit) and in non-residential and other applications, the Company warrants the heat exchanger against defects in material and workmanship for a period of twenty years from the date of original installation.

**B. LIFETIME LIMITED WARRANTY ON HEAT EXCHANGER ONLY** - The Company warrants to the original purchaser, during his or her lifetime, that the heat exchanger will be free from defects material and workmanship; provided, however, this warranty shall apply only to the original installation of the furnace in a single family dwelling (i.e., where the furnace services only one dwelling unit) used without interruption as the purchaser's principal residence.

The Company's warranty obligation in A or B above shall be, at its sole option, to provide a new heat exchanger without charge for the heat exchanger itself or allow a credit in the amount of the then current factory selling price of an equivalent heat exchanger toward the purchase price of a new Carrier furnace [without charge if the retail price of a new furnace is less than the factory price of a new or equivalent heat exchanger].

(highlighted by Carrier; note different in placement on document)

**WARRANTY CONDITIONS:**
1. Warranties apply only to furnaces in their original installation location.
2. Installation, use, care, and maintenance must be normal and in accordance with instructions contained in the Owner's Manual and Company's service information.
3. Defective parts must be returned to the distributor through a registered servicing dealer for credit.
4. All work shall be performed during normal working hours.

**LIMITATION OF WARRANTIES** – ALL IMPLIED WARRANTIES (INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE) ARE HEREBY LIMITED IN DURATION TO ONE YEAR. SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, SO THE ABOVE MAY NOT APPLY TO YOU. THE EXPRESS WARRANTIES ARE EXCLUSIVE AND MAY NOT BE ALTERED, ENLARGED, OR CHANGED BY ANY DISTRIBUTOR, DEALER, OR OTHER PERSON WHATSOEVER.

**COMPANY WILL NOT BE RESPONSIBLE FOR:**
1. Normal maintenance as outlined in the installation and servicing instructions or Owner's Manual, including filter cleaning and/or replacement and lubrication.
2. Damage or repairs required as a consequence of faulty installation, misapplication, abuse, improper servicing, unauthorized alteration or improper operation.
3. Failure to start due to voltage conditions, blown fuses, open circuit breakers, or damages due to the inadequacy or interruption of electrical service.
4. Damage as a result of floods, winds, fires, lightning, accidents, corrosive environments or other conditions beyond the control of Company.
5. Parts not supplied or designated by Company, or damages resulting from their use.
6. Company furnaces installed outside the continental U.S.A., Alaska, Hawaii, and Canada.
7. Electricity or fuel costs, or increases in electricity or fuel costs from any reason whatsoever, including additional or unusual use of supplemental electric heat.
8. ANY SPECIAL INDIRECT OR CONSEQUENTIAL PROPERTY OR COMMERCIAL DAMAGE OF ANY NATURE WHATSOEVER. Some states do not allow the exclusion of incidental or consequential damages, so the above limitation may not apply to you.

This Warranty gives you specific legal rights, and you may also have other rights which vary from state to state.

Catalog No. 530-108
6-01

(note different form than provided to us as customers at purchase)

49004DP02

Carrier Corporation
P.O. Box 4808
Carrier Parkway
Syracuse, New York 13221
315 432-6000



294907



November 8, 2005

RECEIVED

NOV 14 2005

ATTORNEY GENERAL
CONSUMER PROTECTION

M. Nixten, Consumer Protection Specialist
State of Ohio Attorney General
340 E. Broad St
14th Floor, Dept. 066
Columbus, OH 43215-3400

Re:         Lyle Gatchel
Complaint    294907

Dear M. Nixten:

Thank you for your recent letter concerning the issues brought to you by Mr. Gatchel.

I have enclosed a copy of the warranty certificate for Mr. Gatchel's furnace. I have highlighted the part of the certificate which indicates that our warranties do not cover labor or trip charges.

As our warranty certificate specifically states that labor is not part of the warranty, I must deny Mr. Gatchel's request for assistance.

Again, thank you for writing and for allowing me the opportunity to review Mr. Gatchel's concerns.

Regards,

Joanne Hertel
Manager, Customer Care Center

907-014





